UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GARON NICHOLAS TAYLOR,

    Petitioner,

v.                                       Case No. 6:07-cv-574-Orl-35KRS

JAMES R. MCDONOUGH, et al.,

    Respondents.
_____/

## **ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a timely response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 11). Petitioner filed a reply to the response (Doc. No. 15).

Petitioner alleges seven claims for relief in his habeas petition: 1) counsel was ineffective for failing to enter exculpatory evidence ; 2) counsel was ineffective for failing to seek suppression of Petitioner's post-*Miranda*[1] admission; 3) counsel was ineffective for failing to investigate, discover, and present defense witnesses as to the identity issue; 4) counsel was ineffective for failing to prepare for trial; 5) counsel was ineffective for failing to seek exclusion of the State's expert witnesses; 6) counsel was ineffective for failing to

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

object to prosecutorial misconduct; and 7) counsel's cumulative errors deprived Petitioner of a fair trial.

## I. Procedural History

Petitioner was charged by information with attempted felony murder, robbery with a firearm, and aggravated assault with a firearm. A jury trial was held, and Petitioner was found guilty as charged in the information. The trial court adjudicated Petitioner guilty of the crimes and sentenced him to imprisonment for a term of forty years as to each count, with the sentences to run concurrently. Subsequently, the aggravated assault with a firearm count was dismissed by the trial court.

Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*. Petitioner then filed a second Rule 3.850 motion with the state trial court, which was denied. The state appellate court affirmed the denial *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of

---

[2]Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.     *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3]  *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.     Analysis

#### A.     The State Courts' Consideration of Petitioner's Claims

Petitioner's claims were raised in his first Rule 3.850 motion, and the trial court denied the claims. Utilizing the standards set forth in *Williams*, this Court finds that the state court's decision was not contrary to the governing legal authority.[4] The state court, correctly identified *Strickland* as the controlling legal authority on Petitioner's claims of ineffective assistance of counsel and did not reach an opposite conclusion from the United States Supreme Court on a question of law. Additionally, Petitioner has not cited to any decision of the United States Supreme Court that, faced with materially indistinguishable facts, reached a decision different from the state court's decision in this case. Therefore, the state court's decision was not contrary to governing United States Supreme Court precedent.

Furthermore, the Court is unable to say that the trial court's application of *Strickland's* attorney performance standard was objectively unreasonable. As noted in

---

[4]The Court notes that a state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 123 S. Ct. 362, 365 (2002).

5

*Bell*, "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. This Court may not grant the writ simply because it determines that the state court erroneously or incorrectly applied the correct governing law. Relief is only warranted if the application was unreasonable. *Id*. Under this demanding standard, the state court's determination that Petitioner did not show either deficient performance by his counsel or that he suffered prejudice was reasonable. The Court will further review Petitioner's claims below.

### B.     Claim One

Petitioner asserts that counsel was ineffective for failing to offer exculpatory evidence. In particular, Petitioner mentions that counsel did not introduce the sworn witness statement of Dante Battle under the adoptive admissions statement. *See* § 90.803(18)(b), Florida Statutes. Mr. Battle was in the getaway vehicle with Petitioner.

Section 90.803(18)(b), Florida Statutes provides an exception to the hearsay rule when a statement is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth. Here, the trial court found, and this Court finds no error with the determination that, the statement made by Mr. Battle was not one that would have been offered against Petitioner or that Petitioner had manifested an adoption or belief in its truth. Section 90.803(18)(b) was inapplicable to Mr. Battle's statement.

Further, the record reveals that Petitioner's counsel was able to put into evidence certain favorable parts of Mr. Battle's statement before the objection thereto had been sustained.

Finally, Mr. Battle's statement was not favorable to Petitioner. Rather, Mr. Battle

6

asserted that Petitioner was the armed robber and that he (Mr. Battle) was not involved in any of the crimes. Thus, the introduction of Mr. Battle's statement would have been harmful to Petitioner's case. Therefore, there was no showing of ineffective assistance of counsel with regard to this claim.

**C.     Claim Two**

Petitioner states that counsel was ineffective for failing to seek suppression of his post-*Miranda* statement. Petitioner refers to the trial testimony of a transport officer in which it was stated that Petitioner made an inculpatory excited utterance.

At trial, Wednesday Medina, an Orange County Deputy Sheriff, testified that she transported Petitioner to central booking in a patrol vehicle. (Transcript of Trial at 75.) As they exited the vehicle, Petitioner asked her about the charges against him, and she told him that "you're being charged with armed robbery with a firearm and a mask and attempted murder." *Id*. at 75. Petitioner responded as follows: "[A]ttempted murder. . . . I didn't try to kill anybody. I didn't try to kill anyone. . . . [W]e struggled for the gun and the gun went off, but I didn't try to kill him." *Id*.

The trial court found, and this Court finds no error with the determination that there was no *Miranda* violation because these statements were voluntarily made and were initiated by Petitioner. *See Kelvin v. State,* 610 So. 2d 1359, 1363 (Fla. 1st DCA 1992) (finding that *Miranda* does "not apply to volunteered statements initiated by the suspect."). Thus, this claim is without merit.

**D.     Claim Three**

Petitioner alleges that counsel was ineffective for failing to investigate, discover,

7

and present defense witnesses as to the identity issue. Petitioner mentions that he has numerous tattoos on his arms but that eyewitnesses did not notice any tattoos on the perpetrator. He complains that the photographs used by the defense at trial to prove that Petitioner had tattoos before the robbery were of a poor quality and that other evidence should have been presented to prove this issue. Petitioner also argues that a forensic expert should have been utilized to testify as to the inappropriateness of the police investigator's failure to perform a gunshot residue test on either suspect. He also avers that counsel did not properly cross-examine the arresting officers and the emergency medical technician about the manner in which Petitioner exited the getaway vehicle.

As to the tattoo issue, Petitioner's counsel presented sufficient evidence that Petitioner had the tattoos prior to the time when the crimes were committed. (Transcript of Trial at 198-201.) Additionally, although the victim did not remember whether the perpetrator had any tattoos, *id.* at 40, his identification was based on the robber's clothing, the gun used by the robber, and the blue shirt used by the robber as a mask. *Id*. at 23-24. The issue of Petitioner's tattoos was properly presented by counsel, and, in any event, the victim's failure to remember whether the robber had any tattoos did not negate the identification testimony.

As to the gunshot residue test, Shawn Seufert, a detective with the Orange County Sheriff's Department, testified, during cross-examination, that he had asked forensics personnel about performing the test but that "[f]or some reason, they weren't able to do it." *Id*. at 151. Detective Seufert believed that the test was not performed because "when a person sweats, like Mr. Taylor was at the time, they're not as effective." *Id*. at 152.

Petitioner appears to argue that an expert would have shown that proper investigative procedure demanded that a gunshot residue test have been performed. However, such expert testimony would not have added to what the jury already knew: the gunshot residue test was not performed, and the arresting officer believed that the failure to perform the test was based on the ineffectiveness of such a test when the subject was sweating. The jury had sufficient evidence to conclude that the failure to perform a gunshot residue test was a deficiency in the State's case.

As to the manner in which Petitioner exited the getaway vehicle, Petitioner contends that the prosecution argued that he refused to exit the vehicle, was eventually removed from the vehicle at gunpoint, and could have moved evidence that was remaining in the vehicle. Petitioner indicates that a proper cross-examination of the arresting officers and the emergency medical technician would have revealed that Petitioner was removed from the vehicle in an *unconscious* state, which would have weakened the State's case.

At trial, Deputy Bruinsma testified that Petitioner "exited the vehicle on his own power." *Id*. at 90. Deputy Doyle testified on cross-examination that, when he arrived on the scene, he saw both Petitioner and Mr. Battle "outside of the vehicle," that the fire department was on the scene providing treatment, and that an air bag from the vehicle had been inflated. *Id*. at 134. A review of the record reveals that counsel properly examined these witnesses as to this matter and that his performance was in no manner deficient. Further, there has been no showing of prejudice with regard to this matter.

### E. Claim Four

Petitioner states that counsel failed to provide diagrams of the robbery scene and

9

to provide an interpreter for a crucial witness. Petitioner states that counsel should have entered into evidence a diagram of the robbery scene.

The record reflects that Petitioner's counsel used a diagram of the robbery scene during closing argument. The trial court allowed him to use the diagram as a demonstrative aid as a means of providing a "remembrance of the testimony." *Id.* at 239. The diagram represented the general design of the building where the robbery occurred and illustrated an "X" as to the location of an eyewitness. The diagram was not admitted into evidence, and there would have been no basis for doing so. Thus, counsel was not ineffective with regard to this matter.

Petitioner further indicates that counsel should have provided an interpreter for the testimony of Mr. Cordova, an eyewitness. However, there is no indication from Mr. Cordova's trial testimony that an interpreter was needed. His testimony did not reveal that he misunderstood any of the questions or that he had trouble articulating his responses. Moreover, during cross-examination, Petitioner's counsel was able to elicit that the robber had entered the passenger side of the getaway vehicle, not the driver's side. *Id.* at 51. Such testimony contradicted the officer's testimony that the driver was the robber.

## F. Claim Five

Petitioner contends that counsel was ineffective for failing to seek exclusion of the State's expert witnesses. Petitioner refers specifically to expert testimony as to the fingerprint and DNA evidence.

The fingerprint testimony was used to show that Petitioner's latent palm print was found on the right-rear passenger side of the getaway vehicle and to explain how it was

possible to touch objects without leaving latent prints of sufficient quality to make an identification. The DNA testimony was used to show that Petitioners' DNA was present on the shirt found in his possession in the getaway vehicle shortly after the robbery. The shirt was identified by witnesses from the robbery scene as similar to the one used as a mask by the robber.

Petitioner points to no basis for excluding this testimony. The experts were properly qualified, and their testimony was relevant and admissible. Thus, this claim must fail.

### G. Claim Six

Petitioner argues that counsel was ineffective for failing to object to improper remarks made by the prosecutor during closing argument. For example, he references instances of improper shifting of the burden of proof.

The Court finds that the prosecutor's conduct and comments during closing argument were in no way egregious and did not constitute a deprivation of Petitioner's due process rights to a fair trial. In addition, the failure to object to the prosecutor's statements during closing argument and opening statement is within the "wide range" of permissible professional legal conduct and thus does not constitute ineffective assistance of counsel. *United States v. Lively*, 817 F.Supp. 453, 466 (D. Del.), *affirmed*, 14 F.3d 50 (3rd Cir. 1993).

### H. Claim Seven

Petitioner claims that counsel's cumulative errors deprived Petitioner of a fair trial. Since Petitioner has failed to demonstrate that counsel was in any manner ineffective or that he sustained prejudice with regard to any of the matters discussed above, this claim is denied.

11

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Garon Nicholas Taylor is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly, and is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 27th day of February, 2009.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sa 2/27
Counsel of Record
Garon Nicholas Taylor